IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RICHARD GORDON,  §<br>    Plaintiff, §<br> §<br>v. §<br> §<br>GREENVILLE INDEPENDENT §<br>SCHOOL DISTRICT, §<br>    Defendant. § | Civil Action No. 3:13-CV-2914-N-BK |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3*, this case has been referred to the undersigned for pretrial management.  The Court now considers Defendant Greenville Independent School District's *Motion to Dismiss Plaintiff's Original Petition and, in the Alternative, Motion for a More Definite Statement* [Doc. 5].  For the reasons that follow, it is recommended that the motion to dismiss be **GRANTED.**

**I.  BACKGROUND**

This *pro se* action stems from Defendant's decision not to renew Plaintiff's employment contract.  Plaintiff was an educator for 50 years, and was employed by Defendant as a teacher from 2007 to April 2013.  [Doc. 1-6 at 1–2].  While in Defendant's employ, Plaintiff taught high school Spanish for four years, followed by two years teaching English as a Second Language ("ESL") at Crockett Elementary School under the supervision of Principal Shannon Orsborn.  [Doc. 1-6 at 1–2].  Plaintiff avers that he has filed several grievances against Defendant over the last three years; five were decided against him and, of those five, two are currently in the Texas Education Agency ("TEA") appeals process.  [Doc. 1-6 at 8].

Plaintiff asserts that, during the 2011–2012 academic year, he taught his ESL students the standardized curriculum during their designated class period, but Orsborn changed the ESL

program to a "full inclusion model" for the 2012–2013 academic year. [Doc. 1-6 at 2]. That model required Plaintiff to teach his ESL students amid their other classroom instruction. Plaintiff maintains he received no direction for implementing the new model, and that only one or two meetings were held on the subject. [Doc. 1-6 at 2].

Plaintiff further avers that the full-inclusion model was illegal because, due to his unfamiliarity with the subject-matter being taught in the inclusion classrooms, he was utilized only minimally by the other teachers, so that his students received only a few minutes of ESL instruction each class period. [Doc. 1-6 at 2]. According to Plaintiff, he "basically sat there every day for 45 minutes doing little or nothing." [Doc. 1-6 at 3].

Plaintiff complained "often and acidly" to Orsborn, who, in turn, threatened negative consequences, including the loss of his job if Plaintiff pursued his complaints further. [Doc. 1-6 at 3]. Plaintiff claims that Orsborn treated him differently than the other teachers in an attempt to intimidate him and prevent him from reporting the purported illegalities in the ESL program to federal authorities. [Doc. 1-6 at 3–4].

Plaintiff asserts that, beginning in January 2013, he was instructed to document that he provided daily services to his students when, in actuality, he had not done so sufficiently or at all. [Doc. 1-6 at 4]. According to Plaintiff, he regularly spent less than 10 percent of his time delivering actual services, as opposed to being merely present in the classroom. [Doc. 1-6 at 4–5]. Plaintiff alleges that whenever he threatened to report the situation to federal authorities, the harassment was "upped a couple notches more." [Doc. 1-6 at 5].

Despite these difficulties, Plaintiff was told on March 18, 2013, that his contract would be renewed for the 2013–2014 academic year as a teacher of bilingual classes. [Doc. 1-6 at 5]. However, on March 29, 2013, Plaintiff refused to sign the forms documenting that he had

provided the required ESL services, told Orsborn he was "now invoking the Whistle-blower act," and soon thereafter, called the "various Federal Fiscal Monitoring offices of the Texas Education Agency ("TEA"). [Doc. 1-6 at 5]. Subsequently, on April 16, 2013, Plaintiff was notified orally and in writing that he was terminated, allegedly at the behest of Superintendent Donald Jeffries. [Doc. 1-6 at 6, 9]. On May 20, 2013, Plaintiff wrote a formal, "whistle-blower type" letter to the TEA informing the agency of the "illegalities" regarding the ESL services. [Doc. 1-6 at 6, 25].

Plaintiff appealed Defendant's decision not to retain him; however, at the administrative hearing, he was unprepared to present his case against Defendant's two attorneys. [Doc. 1-6 at 9–11]. Plaintiff avers that Defendant refused to substantiate with proof the stated reasons for his termination (that he slept on the job and improperly used the phone), and that Defendant disclosed its witnesses only one day before the hearing, leaving him unable to call rebuttal witnesses on his behalf. [Doc. 1-6 at 10]. Plaintiff further suggests that Jeffries and Orsborn had motive to attack him because he had named them as defendants in his other pending federal lawsuit.[1] [Doc. 1-6 at 12].

On June 26, 2013, proceeding without the assistance of counsel, Plaintiff filed this lawsuit against Defendant in state court. [Doc. 1-6 at 1]. Defendant removed the case to this Court on July 26, 2013, asserting federal question jurisdiction. [Doc. 1 at 2]. Liberally construed, Plaintiff's complaint enumerates three causes of action: (1) unlawful retaliation under the Texas Whistleblower Act; (2) violations of his First Amendment and Texas Constitutional[2]

---

[1] Plaintiff currently has pending another lawsuit before this Court, filed January 15, 2013, against Defendant and many the same actors mentioned in this lawsuit. *See* Doc. 3, No. 13-CV-0178-P. Although Plaintiff similarly alleges claims of discrimination and retaliation in that action, those claims are premised on facts largely unrelated to those giving rise to the claims in this case. *Compare id. with* Doc. 1-6 at 8.

[2] Although the Texas Constitution "grants broader protection to speech than does the United States Constitution," Plaintiff has not advanced any argument that this broader scope affects his

rights to free speech; and (3) violations of his due process right under the Fourteenth Amendment.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil procedure, a plaintiff must allege enough facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). To overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). Moreover, the complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## III.  DISCUSSION

**A.  Texas Whistleblower Act Claim**

Defendant argues that Plaintiff fails to identify the state or federal statute, ordinance, or rule that Defendant or its employees allegedly violated; instead, only referring to "illegalities"

---

claims. *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 563 n.4 (5th Cir. 2003) (citing *Matthews v. Wozencraft*, 15 F.3d 432, 440 (5th Cir.1994)). Consequently, Plaintiff's free speech retaliation claim is analyzed only under the United States Constitution.

4

and claiming that he "put his concerns in writing." [Doc. 5-1 at 11]. Defendant further asserts that because Defendant fails to identify law purportedly violated, he can never meet his burden to establish his subjective belief of the law violation was also objectively reasonable. [Doc. 5-1 at 11]. Defendant further avers that Plaintiff has failed to plead facts showing that the TEA and its Division of Federal Fiscal Monitoring is charged with regulating or enforcing the unidentified law Plaintiff claims was violated. [Doc. 5-1 at 12]. Without establishing that fact, Defendant argues, Plaintiff cannot demonstrate that his belief that he was reporting a violation to an "appropriate law enforcement agency" was reasonable. [Doc. 5-1 at 12].

Plaintiff responds that all teachers and administrators know from "day one" that ESL is a federally-funded program and, thus, those federally funds must only be used for the program earmarked. [Doc. 6 at 2]. Plaintiff argues that pressuring him to verify that he had provide services to ESL students when he had not actually done so constitutes a violation of the "hundreds of pages of federal rules and regulations" pertaining to such funds. [Doc. 6 at 2]. Plaintiff also contends that the TEA is charged with monitoring federal funds in Texas schools and, therefore, was the appropriate law enforcement agency to which to report a violation. [Doc. 6 at 2].

Defendant replies that Plaintiff has still failed to distinguish and specify the law violated from the "hundreds of pages" of regulations he alludes to. [Doc. 7 at 1–2]. Defendant argues that the Court is unable to determine whether the TEA is the appropriate agency without a specific law alleged to be violated. [Doc. 7 at 1–2]. Defendant further contends that Plaintiff simply asserting that he reported the violation to the TEA does nothing to show that doing so was reasonable. [Doc. 7 at 2].

*Applicable Law*

"A state or local governmental entity may not suspend or terminate the employment of . . . a public employee who in good faith reports a violation of law by the employing governmental entity . . . to an appropriate law enforcement authority." TEX. GOV'T CODE § 554.002(a). To maintain a claim under the Texas Whistleblower Act, a plaintiff must show that (1) the plaintiff was a public employee, (2) the defendant was a state agency or local government, (3) the plaintiff reported in good faith a violation of law to an appropriate law enforcement agency, and (4) the plaintiff's report was the but-for cause of the adverse employment action taken by the defendant at the time it was taken. *Guillaume v. City of Greenville*, 247 S.W.3d 457, 461 (Tex. App.—Dallas 2008) (citing *Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995)).

Under the Texas Whistleblower Act, a "law" is a state or federal statute, an ordinance of a local governmental entity, or a rule adopted under a statute or ordinance. TEX. GOV'T CODE § 554.001(1). "Good faith" in this context means that (1) the employee believed his conduct reported was a violation of law and (2) that belief was reasonable in light of his or her training and experience. *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320 (Tex. 2002) (quoting *Wichita Cnty. v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996)). The "appropriate law enforcement authority" for a whistleblowing complaint is one that the employee believes in good faith is authorized to (1) regulate under or enforce the law alleged to be violated or (2) investigate or prosecute violations of criminal law. TEX. GOV'T CODE § 554.002(b). Thus, the same good faith test also applies to determining whether a law enforcement authority is appropriate. *Needham*, 82 S.W.3d at 320–21.

*Analysis*

Plaintiff fails to state a claim under the Texas Whistleblower Act because he has not alleged the very basic fact of a specific law violation. Defendant correctly argues that Plaintiff's allegation of a law violation must be more explicit than the mere reference to "hundreds of pages of federal rules and regulations." [Doc. 6 at 2]; *see Collins*, 224 F.3d at 498 (some level of factual specificity must be present to overcome a motion to dismiss). Moreover, the Texas Whistleblower Act requires that the report of the requisite law violation be made to the appropriate law enforcement authority; however, without the identification of the law violation, such determination is impossible. Finally, even if Plaintiff subjectively believed that TEA was the appropriate authority for his complaint, the inquiry does not end there; the trier of fact must also determine that Plaintiff's belief was objectively reasonable before he can prevail. *Hart*, 917 S.W.2d at 784; *see Needham*, 82 S.W.3d at 320–21 (applying the "good faith" analysis after first deciding that the defendant agency was not the appropriate authority for the violation reported).

Furthermore, though not addressed by the parties, Plaintiff has failed to allege facts that, if true, establish that his report to the TEA was the but-for cause for the non-renewal of his contract. By his own allegations, Plaintiff's first contact with the TEA occurred on May 20, 2013, over a month after his employment was terminated on April 16, 2013. [Doc. 1-6 at 6]. Plaintiff asserts that on March 29, 2013, he *threatened* Defendant's agents about his invocation of the Texas Whistleblower Act and his intentions to report a violation of law, but alleges only that he called various offices of the TEA "soon thereafter." [Doc. 1-6 at 6]. Thus, Plaintiff has not pled facts that, if taken as true, establish he contacted TEA prior to his termination -- a finding paramount to establishing his report to law enforcement was the but-for cause of his contract not being renewed. *See Collins*, 224 F.3d at 498 (conclusory allegations are insufficient

7

to state a claim); [Doc. 1-6 at 13]. Accordingly, Plaintiff's claim under the Texas Whistleblower Act is subject to dismissal.

## B. Section 1983 Claims

Defendant contends that Plaintiff also has failed to plead sufficient facts to establish municipal liability under Section 1983. [Doc. 5-1 at 14–15]. Specifically, Defendant states that Plaintiff cannot show that his termination was the result of an official policy or custom because he has not alleged that Defendant's Board of Trustees, the final policymaker with respect to his employment, adopted or sanctioned a policy that led to a violation of Plaintiff's rights. [Doc. 5-1 at 15]. Absent an action taken by the Board, Defendant argues, Plaintiff's allegation that Defendant pursued a policy that caused his rights to be denied is conclusory and cannot support municipal liability. [Doc. 5-1 at 15].

Alternatively, Defendant avers that even if it can be held liable under Section 1983, Plaintiff has failed to connect his termination to his protected speech because there is no basis to impute any improper motives of Defendant's employees to the Board and Plaintiff has not alleged that the Board had actual knowledge of the purported improper basis for his termination. [Doc. 5-1 at 14]. Defendant further contends that Plaintiff has failed to show that he has a property or liberty interest in his employment sufficient to render the nonrenewal of his employment contract a violation of his right to due process. [Doc. 5-1 at 17–18]. Specifically, Defendant avers that, despite Plaintiff's conclusory statements that he had an expectation of continued employment [Doc. 1-6 at 16], the Texas Education Code expressly provides that a teacher does not have a property interest in a contract beyond its term. [Doc. 5-1 at 18] (citing TEX. EDUC. CODE § 21.204(e)). Defendant also argues that no liberty interest is implicated because the nonrenewal of his contract did not involve any charge that would seriously damage

his standing in the community, such as one of dishonesty or immorality. [Doc. 5-1 at 18–19]. Defendant states that the charges of Plaintiff's lack of professionalism that formed the basis for his nonrenewal are not in the analogous to charges of dishonesty and immorality. [Doc. 5-1 at 19].

Plaintiff responds that it is unlikely that he would work in public education for 50 years with positive evaluations and suddenly become unprofessional and negative. [Doc. 6 at 3]. Imploring the Court to use common sense and logic, Plaintiff states that his termination was in response to his filing 12 grievances, three appeals to the Board, a federal lawsuit, and two complaints with the Equal Employment Opportunity Commission ("EEOC") against Defendant. [Doc. 6 at 3]. Plaintiff deems Defendant's arguments against his due process claim "utter nonsense," and directs the Court to the record of the administrative appeal hearing, which he has not produced. [Doc. 6 at 3]. Plaintiff avers that he was "vilified in every possible way" and speculates about the difficulty of finding another job after "an attack like this." [Doc. 6 at 3]. Plaintiff also suggests that his hearing was unfair, noting that Defendant retained two lawyers to represent its interests at the hearing. [Doc. 6 at 4].

*Applicable Law*

Municipalities and other local government entities are "persons" within the scope of Section 1983. *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 690 (1978). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). To impose Section 1983 liability on a municipality, a plaintiff must show: (1) a final policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights whose moving force is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Final policymaking

9

authority in an independent school district rests with the district's Board of Trustees unless such authority is delegated to an official.  See *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) (citing TEX. EDUC. CODE §§ 23.01, 23.26).

Unconstitutional actions of officials or employees of a municipality do not render the municipality liable under Section 1983 unless they execute official policy as contained in policy statements, ordinances, or regulations.  *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).  An entity cannot be held liable under Section 1983 on a *respondeat superior* theory.  *Monell*, 436 U.S. at 691, 694.  The identification of a policy "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997) (citations omitted).  If an unconstitutional act is performed pursuant to a custom that has not formally been approved by a policymaker, a municipality is subject to Section 1983 liability only if the custom is so widespread as to have the force of law.  *Id.* at 404.  Furthermore, any policy that "allegedly caused constitutional violations must be specifically identified by a plaintiff, and it must be determined whether each one is facially constitutional or unconstitutional." *Piotrowski*, 237 F.3d at 579–80.  An isolated unconstitutional act by a municipal employee can almost never trigger Section 1983 liability.  *Id.* at 578.

To establish a claim for First Amendment retaliation, a plaintiff must show that (1) he suffered an adverse employment decision, (2) his speech involved a matter of public concern, (3) his interest in commenting on matters of public concern outweighs the defendant's interest in promoting efficiency, and (4) his speech motivated the adverse employment decision.  *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001) (quoting *Harris v. Victoria Indep.*

*Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999)). In other words, the plaintiff must show that he engaged in protected conduct and that it was a motivating factor in his discharge, after which the burden shifts to the defendant to show by a preponderance of the evidence that it would have come to the same conclusion absent the protected conduct. *Beattie*, 254 F.3d at 601 (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)). Even if speech on a matter of public concern was a substantial or motivating factor in a plaintiff's termination, a defendant may escape liability by showing that it would have taken the same action in the absence of the protected conduct. *Beattie*, 254 F.3d at 603. Unless policymaking authority has been delegated, a plaintiff must impute any improper motives to the final policymaking authority by showing that it "approved *both* the decision and the basis for it." *Id.* (emphasis added). Without a showing that the final policymaker had actual knowledge of the improper basis for an official's decision, it cannot be liable for the alleged retaliation. *Id.* at 604 (citing *Cabrol v. Town of Youngsville*, 106 F.3d 101, 108 (5th Cir. 1997)).

Finally, the Fourteenth Amendment prohibits governments from depriving "any person of life, liberty, or property without due process of law." U.S. CONST. amend. XVI. However, to establish a claim for redress of a due process constitutional violation under Section 1983, a plaintiff must identify a protected life, liberty or property interest and prove that government action resulted in the deprivation of that interest. *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). The sufficiency of property interest claims are decided by reference to state law. *Blackburn v. City of Marshall*, 42 F.3d 925, 937 (5th Cir. 1995) (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976)). The Texas Education Code provides that a "teacher does not have a property interest in a contract beyond its term." TEX. EDUC. CODE § 21.204(e). Moreover, the mere proof that the nonrenewal of an employment contract might make a plaintiff less attractive to other

employers or negatively impact his general reputation does not implicate a liberty interest. *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 (5th Cir. 1984); *Hughes v. City of Garland,* 204 F.3d 223, 226 (5th Cir. 2000). A protected liberty interest is implicated only if an employee is discharged in a manner that creates a false and defamatory impression about him, thus stigmatizing him and foreclosing him from other employment opportunities. *Id.*; *see also Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972) ("where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential").

*Analysis*

In the instant case, Plaintiff fails to state a claim for First Amendment retaliation or a due process violation under Section 1983 because his allegations are insufficient to give rise to municipal liability. Defendant's Board of Trustees is its final policymaker; however, Plaintiff has not alleged facts from which it can be inferred that he was termination due to the actions of the Board. Defendant also has not alleged that the Board damaged him, delegated policymaking authority to Superintendent Jeffries (whom Plaintiff contends was responsible for his termination), or that Jeffries decisions were non-reviewable by the Board. *See Sherman v. Dallas Indep. Sch. Dist.*, No. 10-CV-1146, 2011 WL 477500 at *9 (N.D. Tex. 2011) (Ramirez, M.J.) (recommending dismissal of an analogous case), *Report and Recommendation adopted by* 2011 WL 477465 (Boyle, J.).

Furthermore, even assuming the Board made the decision to terminate Plaintiff, as the Court held in *Sherman*, "his complaint does not allege that an official policy or custom caused a violation of his rights, and contains no factual allegations indicating he was terminated pursuant to an official policy or custom of [Defendant]." *Id.* Specifically, Plaintiff has not identified a

purported policy that violated his constitutional rights, shown how that policy is attributable to the Board, or "establish[ed] that he incurred damages because of the application of that specific policy." *Id.* (citing *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc)); s*ee also Hoskins v. Kaufman Indep. Sch. Dist.*, No. 03-CV-0130, 2003 WL 21517830 at *6–7 (N.D. Tex. 2003) (Fitzwater, J.) (public school police officer, allegedly terminated for reporting child sexual abuse, failed to state a First Amendment claim when he failed to allege that his free speech rights were violated by district policy or custom). Alternatively, Plaintiff has failed to allege the presence of a "persistent, widespread practice of [Defendant's] officials [that] is so common and well settled as to constitute a custom that fairly represents [district] policy." *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995). Thus, Plaintiff has failed to establish municipal liability against Defendant under Section 1983.

Even if Plaintiff could establish municipal liability, with respect to his First Amendment retaliation claim, he has not alleged facts to establish that the Board approved the decision to terminate him *and* that it did so with the bad motives he posits. *See Beattie*, 254 F.3d at 603 (requiring proof of both facts). Indeed, Plaintiff has not alleged any facts which could establish the Board's knowledge of the improper motives he ascribes to Superintendent Jeffries and Orsborn. Plaintiff's Complaint fails to clearly state what the allegedly improper motive was: While in his Complaint Plaintiff alleges his termination was a result of reporting unlawful ESL-related activity to the TEA, in his response he contends his termination was in retaliation for his other pending federal lawsuit, 12 grievances, three appeals to the Board, and two EEOC complaints filed against Defendant. [Doc. 6 at 3]. Even if true, termination for the reasons stated in the response does not contravene Plaintiff's First Amendment right to speak on matters of public concern.

Furthermore, municipal liability notwithstanding, Plaintiff's due process claim fails because he cannot establish a liberty interest in the failure to renew his employment contract. Even if his allegations about Defendant's defamation are taken as true, they are insufficiently stigmatizing to give rise to a liberty interest under the law. Plaintiff essentially states that Defendant defamed him by alleging that he was occasionally caught resting or sleeping on the job and talking on the phone [Doc. 1-6 at 9–12], but these allegations fall short of the bar set by the Supreme Court. Reputation is tied to matters of dishonesty, immorality, or even drunkenness, but Plaintiff has only alleged an attack by Defendant on his professionalism. *See* Roth, 408 U.S. at 573 (charges of dishonesty and immorality would implicate a liberty interest); Dennis v. S&S Consol. Rural High Sch. Dist., 577 F.2d 338, 340–41 (5th Cir. 1978) (same for charges of drunkenness); *see also* Rosenstein v. City of Dallas, 876 F.2d 392, 395 n.2 (5th Cir. 1989) (equating the requisite stigma to a "badge of infamy"). Notwithstanding that Defendant's allegations of unprofessionalism may make Plaintiff less attractive to other employers, no constitutional liberty interest is implicated, Wells, 736 F.2d at 256, and without a property or liberty interest in his employment, Plaintiff had no right to procedural due process. Browning v. City of Odessa, 990 F.2d 842, 844 (5th Cir. 1993) (citing Roth, 408 U.S. at 576–78).

To the extent that Plaintiff alleges a violation of due process because Defendant did not follow its own procedures, said claim also fails because "a violation of state law is neither a necessary nor a sufficient condition for a finding of a due process violation." McIntosh v. Partridge, 540 F.3d 315, 323–24 (5th Cir. 2008) (quoting Stern v. Tarrant Cnty. Hosp. Dist., 778 F.2d 1052, 1059 (5th Cir. 1985) (en banc)). The fundamental issue in a due process claim is not whether state officials violated state law, but whether they provided the plaintiff with the federal constitutional minimums. Gerhart v. Hayes, 201 F.3d 646, 650 (5th Cir. 2000).

For the foregoing reasons, Plaintiff's 1983 claims based on First Amendment retaliation and a violation of his right to due process are subject to dismissal for failure to state a claim.

**C. Conspiracy under 42 U.S.C. § 1985**

Defendant alleges that Plaintiff's Section 1985 conspiracy claim fails because he has not alleged a conspiracy involving more than one actor or that the alleged conspiracy is based on a suspect class. [Doc. 5-1 at 16–17]. To state a claim under Section 1985, a plaintiff must allege facts demonstrating (1) the existence of a conspiracy, (2) for the purpose of depriving a person of the equal protection of law, and (3) an act in furtherance of the conspiracy, (4) which causes injury to a person or deprivation of any right or privilege of a United States citizen. *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010). The conspiracy must also stem from some racial or other class-based animus. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994); *see also Chambers v. City of Mesquite*, No. 06-CV-2279-G, 2008 WL 53282 at *2 (N.D. Tex. Jan. 3, 2008) (same).

Plaintiff fails to allege any "class-based discriminatory animus" that would give rise to a Section 1985 conspiracy to violate his right to equal protection under the law. *See Chambers*, 2008 WL 53282 at *2 (requirement that Section 1985 claim be based on class-based discriminatory animus is "settled law"). Furthermore, a conspiracy claim is not actionable without an actual, underlying violation of Section 1983, *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992), and as discussed in detail this Recommendation *supra*, Plaintiff cannot maintain his Section 1983 claims against Defendant.

Accordingly, Plaintiff's Section 1985 claim should be dismissed with prejudice. *See McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561–62 (5th Cir. 1998) (noting that

15

dismissal with prejudice is appropriate if it appears that no relief can be granted under any set of facts that could be proven consistent with the plaintiff's allegations).

## IV.  LEAVE TO AMEND

A court may dismiss a claim that fails to meet the pleading requirements, but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after repeated opportunities to do so."  *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000); *see also Brown v. Texas A&M Univ.*, 804 F.2d 327, 334 (5th Cir. 1986) ("Unless we have searched every nook and cranny of the record, like a hungry beggar searching a pantry for the last morsel of food, and have determined that 'even the most sympathetic reading of plaintiff's pleadings uncovers no theory and no facts that would subject the present defendants to liability,' we must remand to permit plaintiff to amend his claim if he can do so.").  Plaintiff is proceeding without the assistance of counsel and has not previously been granted leave to attempt to plead his claims against Defendant with particularity.  Thus, before dismissing his claims, Plaintiff should be given the opportunity to amend his complaint to allege specific facts or occurrences that remedy the foregoing deficiencies in his Texas Whistleblower Act, First Amendment retaliation, and liberty interest due process claims.  S*ee Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) (dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified).

## V.  CONCLUSION

Defendant's motion to dismiss should be **GRANTED**.  Plaintiff's conspiracy claim under 42 U.S.C. § 1985 should be **DISMISSED WITH PREJUDICE**.  However, Plaintiff is permitted to amend his Complaint, **on or before March 19, 2014,** to correct the deficiencies in his Texas Whistleblower Act, First Amendment retaliation, and liberty interest due process

claims.[3]  If Plaintiff fails to do so, Defendant's motion to dismiss should be **GRANTED**, and **all claims** against it should be **DISMISSED WITH PREJUDICE**.  Because Plaintiff is given leave to amend his complaint, Defendant's alternative request for a more definite statement is **DENIED AS MOOT**.

   **SO RECOMMENDED** on March 6, 2014.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL OR OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[3]  Plaintiff is advised that an amended complaint will completely supersede (take the place of) the original complaint.  See *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) ("An amended complaint supersedes the original complaint and renders it of no legal effect").  Thus, Plaintiff's amended complaint, if any, must state *all* of his claims permitted under this recommendation.